UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Avrahum Weisman,           CIVIL ACTION NO: 3:11-cv-1929
    Plaintiff

v.

M & J Bus Co.,
    Defendants.           December 13, 2011

## COMPLAINT

**INTRODUCTION**  This complaint is primarily a federal wage and hour claim, with supplementary state claims including wrongful termination, infliction of emotional distress, and breach of contract with its implied covenant of good faith and fair dealing.  It includes another federal claim as well:  racial discrimination, actionable under 42 U.S.C. 1981 et seq.

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. sec. 1331 for federal claims, here the wage and hour claim, as well as special jurisdiction pursuant to 42 U.S.C. 1981 et seq, for the racial discrimination claims.  With respect to the state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. sec. 1367 in that the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2. Venue is appropriate in the District of Connecticut pursuant to 28 U.S.C. sec. 1391 (b), because a substantial part of the events giving rise to this claim occurred in this judicial district

## THE PARTIES

3. The plaintiff is Avrahum or "Abe" Weisman [hereinafter "Plaintiff"] who was employed by the defendant from 2005 till 2009.

1

4. The defendant is M & J Bus, Inc. [hereinafter "Defendant"], who was, at the time of Plaintiff's termination, operating a station where Plaintiff was employed in East Hartford, with Mike Collins and Steve French there in management positions.

5. Defendant was at all times relevant a Connecticut corporation licensed and doing business in Connecticut, from 130 Ingham Hill Road, P.O. Box 801, Old Saybrook, CT 06475, with over 200 employees.

6. Defendant was at that time and until today owned and operated as a domestic stock company by Mr. and Mrs. Michael C. and Karen A. Beebe.

**STATEMENT OF FACTS**

7. Plaintiff was terminated on or about December 16, 2011.

8. Prior to his termination, Plaintiff was accused of over-billing.

9. In fact, it was Defendant that engaged in the pattern and practice of requiring its employees to work off the clock in various ways, as will be described in greater detail below.

10. While Plaintiff sometimes did work off the clock, as expected by Defendant, particularly as to the daily bus cleaning, on other occasions he insisted on clocking the actual time it took him to drive various routes.

11. Plaintiff's refusing to work off the clock was the true cause of his being fired.

**COUNT ONE:  FAIR LABOR STANDARDS ACT**  This action is brought under the provisions of the Act of June 25, 1938, c. 676, 52 Stat. 1069, 29 U.S.C. secs. 201-219, known as the Fair Labor Standards Act [hereinafter "FLSA"], a law of the United States regulating commerce.

1.11.    Plaintiff restates, re-alleges and incorporates by reference paragraphs 1-11 above, as if they had been fully set forth herein..

12. Defendant M & J Bus Co. at all times hereinafter mentioned was engaged in the transportation of school children, using buses which had moved in interstate commerce.

13. In such business, from on or about January 2005 until December 26, 2009, Defendant employed Plaintiff as a school bus driver.

14. During such time Defendant employed Plaintiff without paying him for all the time he was engaged in labor for Defendant.

15. Instead, Plaintiff was expected to work off the clock in the mornings and/or evenings when he cleaned the bus; and was expected to toilet and clock-off during down times although yet on the route.

16. In addition, Plaintiff and the other employees were expected to clock "fictional" run times instead of the actual time it took them to make a run, whenever the actual time was greater than the standard budgeted or "theoretical" time to complete a run.

17. Because of these unreported hours, during such time as Defendant employed Plaintiff, he was at times employed for work weeks in excess of forty hours without being compensated at a rate one and one-half times the regular rate at which he was employed, in violation of Section 7 of the Fair Labor Standards At, 29 U.S.C. sec. 207.

18. As a result of the Defendant's violating the aforesaid Act, there became due and owing to Plaintiff the sum of at least an hour a day, or approximately $75/week, although Plaintiff is unable to determine the exact amount because of the fact that all records, books, and accounts are maintained by the Defendant (approximately $3,000).

19. In addition to the amount due from Defendant to Plaintiff, Plaintiff also claims an amount equal to that due in the form of liquidated damages as provided by the aforesaid act (approximately $6,0000).

20. In accordance with the provisions of the said act, request is hereby made for a reasonable attorney's fee and cost of action to be assessed against Defendant, approximately $3,000.

WHEREFORE, Plaintiff demands judgment against Defendant for all sums which may be found to be due, as aforesaid, and for an additional equal amount as liquidated damages, and for attorney's fees and costs of this action.

## COUNT TWO:  FLSA AND CONNECTICUT OVERTIME AND RECORD KEEPING VIOLATIONS

1-20.  Plaintiff restates, re-alleges and incorporates by reference paragraphs 1-20, of Count One above, as if fully set forth herein.

21.     Defendant did not pay Plaintiff at the rate of one and one-half times his regular hourly rates for hours worked in excess of forth hours in a week, in violation of the federal Fair Labor Standards Act, 29 U.S.C. sec. 207 and Connecticut overtime laws, including Conn. Gen. Stat. sec. 31-68 and secs. 31-76b through 31-76c.

22. Defendant's failure to pay overtime, as required by both Connecticut and federal law was willful, arbitrary, and/or in bad faith inasmuch as Defendant was aware of their obligation to pay Plaintiff consistent with both state and federal minimum wage and overtime law and did not do so, when Plaintiff worked over forty hours per week due to being forced to work off-the-clock.

23. At all relevant times, Defendant willfully, regularly, and repeatedly failed to make, keep and preserve accurate records required by the FLSA with respect to Plaintiff, including records sufficient to determine accurately the wages and hours of employment pertaining to Plaintiff, per the GPS and/or DVR records available to management.

24. At a minimum, however, Plaintiff was underpaid approximately one hour a day, concerning off-the-clock clean up times and other down time (waiting between jobs, or bathroom breaks,

etc.) or time not allowed to be billed appropriately, regarding Defendant's requirement that its drivers clock "fictional" or standardized run times.

WHEREFORE, Plaintiff demands judgment against Defendant for all sums which may be found to be due, as aforesaid, and for an additional equal amount as liquidated damages, and for attorney's fees and costs of this action.

**COUNT THREE:  WRONGFUL TERMINATION**.

1.24.   Plaintiff repeats and re-alleges paragraphs 1-24 of Count Two above as if fully set forth herein.

25. Defendant wrongfully accused Plaintiff of padding his time cards, and cited it as the reason for his termination, when, in fact, it was Defendant who expected its employees to work off the clock by informing employees that they must routinely clean the buses on their own time, at the end of the day, or at the beginning of the day, before clocking in.

26. Although Plaintiff complied as to the off-the-clock cleaning, in order to keep his job, Plaintiff was targeted for refusing to reduce all of his actually-worked hours to the set hours, determined by Defendant's theoretical or standard run times, without regard to traffic conditions, bathroom breaks, or down-time between runs.

27. In order to keep his job, Plaintiff was forced to agree that $500 be docked from his pay, and this fine was written up as a "loan" which he was required to pay back in subsequent weeks.

28. Defendant's employees, including Sarah the dispatcher, lied about the alleged discrepancies in time cards as punched or signed-out from time worked.

29. Other factors, such as racial discrimination and retaliation, were part of the wrongful termination as well.  See Counts Five and Eight below.

30. Plaintiff was then wrongfully terminated in violation of various public policies, including those requiring pay for hours worked, and, as a result, Plaintiff has suffered economic loss.

**COUNT FOUR:  LIBEL AND/OR SLANDER, AND DEFAMATION.**

1.30.    Plaintiff repeats and re-alleges paragraphs 1-30 of Count Three above as if set forth fully herein.

31. Acting as agents for Defendant, various employees accused Plaintiff of over billing.

32. They falsely informed Teamster Union representatives and others that Plaintiff had over-billed.

33. As a result, Plaintiff has suffered emotional harm and economic loss.

**COUNT FIVE:  RACIAL DISCRIMINATION AND HARASSMENT AND HOSTILE WORKPLACE in violation of 42 U.S.C. 1981 et seq.**

1.33.    Plaintiff repeats and re-alleges paragraphs 1-33 of Count Four above as if fully set forth herein.

34.  Plaintiff is of Jewish descent and race and observes Jewish traditions.

35.  The aforesaid wrongful termination and libel and/or slander and defamation by Defendant was in part racially motivated.

36.  Plaintiff was fired shortly after he uttered a "Happy Chanukah" greeting over his bus intercom.

37.  After Plaintiff pleaded with Mr. Steve French not to fire him during the Christmas season, Plaintiff was hostilely chastised by Mr. French who stated that Plaintiff should not talk about Christmas because "that means something to some people."

38.  Other employees taunted, name-called, and threatened Plaintiff with physical violence on the grounds of his religion, ancestry, or race, calling him a "Jew Bastard," threatening he would

6

not be there if it were not for the union, or talking about inflicting violence, by saying that they had done so to others.

39.  One employee intimidated Plaintiff by calling attention to a knife that employee carried with him when Plaintiff had stopped at a McDonald's for a bathroom break.

40.  The employee with the knife was not reprimanded in any way.

41.  Other employees who engaged in the these discriminatory, harassing acts were promoted.

42.  The above-described behaviors were thus both tolerated and condoned by Defendant and its management and safety officers who either witnessed or were told about the incidents.

43. Defendant refused to alter Plaintiff's schedule to allow him to sit *shiva* for his father, after his passing, in June 2009, or to attend daily prayers for that week, or month, or subsequently, to attend services to say *kaddish* in memory of his father, although the schedule could easily have been adjusted to accommodate this request.

44. Defendant's dispatcher Sara was threatening and antagonistic when Plaintiff put the real time in the DVR book, or asked her to sign his timecards in which he referenced the GPS system for discrepancies between the standard v. his actual time, where the actual time involved more time than his standard time would have.

45. Defendant reserved preferred runs and employment status, promotion, and increased pay for employees who were favored by management instead of according to merit and skill, in violation of the protected status of employees.

46. Whenever Plaintiff sought advancement, he was attacked in one of the manifold ways described herein.

WHEREFORE, Plaintiff seeks statutory damages and compensation.

**COUNT SIX:  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

1.46.   Plaintiff repeats and re-alleges paragraphs 1-46 of Count Five above as if set forth fully herein.

47. Those aforesaid actions were undertaken negligently.

48. Regarding Count Four, such statements were made with negligent disregard for their untruth.

49. Plaintiff suffered emotional distress from the issuance and distribution of these false reports, as well as from the hostile workplace, wrongful termination, and racial discrimination as described above.

**COUNT SEVEN:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

1-46.  Plaintiff repeats and re-alleges paragraphs 1-46 of Count Five above as if set forth fully herein.

47.  In the alternative, the aforesaid actions were undertaken intentionally.

48.  Regarding Count Four, such statements were made with deliberate disregard for their untruth.

49.  The aforesaid actions and statements were extreme and outrageous, in violation of public policy.

50.  Plaintiff has suffered severe emotional distress as a result of the issuance and distribution of these false reports and other behaviors described above.

**COUNT EIGHT:  BREACH OF CONTRACT, IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.**

1.46.   Plaintiff, restates, re-alleges and incorporates by reference paragraphs 1-46 of Count Five above, as if fully set forth herein.

47.49. Plaintiff, restates, re-alleges and incorporates by reference paragraphs 47-49 of Count Six above, as if fully set forth herein.

50-53. In the alternative, Plaintiff, restates, re-alleges and incorporates by reference paragraphs 47-50 of Count Seven above, as if fully set forth herein.

54. Defendants failed to pay Plaintiff the full wages, as set forth above, expecting Plaintiff to work off-the-clock entirely, as when cleaning, by virtue of Defendant's expectation that its drivers log standard run times.

55. Defendants often refused to pay for bathroom breaks, as part of its standard run time schema.

56. Shortly before Plaintiff was fired, he was jumped by a rough-housing student, a very powerful football player, on or about December 9, 2009.

57. Anticipating a workers compensation claim, Defendant fired Plaintiff.

58. Plaintiff was required to agree to be docked $500 to keep his job, and as a compromise, this $500 "fine" was instead written up as a loan which he was paying back weekly – when, in fact, the $500 was time which Defendant expected Plaintiff to work off-the-clock.

59. Defendant has refused to date to pay Plaintiff for days he took off for the funerals of his father and father-in-law, although such payment is provided for in the employee manual.

60. By virtue of all the above, Defendant breached its contract with Plaintiff, and its implied covenant of good faith and fair dealing.

61. As a result, Plaintiff has suffered economic and non-economic loss.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court:

1. Order Defendant to pay all wages owed, consistent with the federal and Connecticut minimum wage, overtime, and wage payment laws;

2. Award Plaintiff liquidated or double damages for all wages and other compensation owed pursuant to 29 U.S.C. sec. 216(b) et seq and Conn. Gen. Stat. sec. 31-72 et seq;

3. Award Plaintiff his reasonable attorney's fees and costs;

4. Award Plaintiff prejudgment and post-judgment interest.

5. Award Plaintiff such other legal and equitable relief that the Court deems appropriate, pursuant to Plaintiff's state law and 42 U.S.C. 1981 claims.

## REQUEST FOR TRIAL BY JURY

The plaintiff, Abe Weisman, respectfully requests a trial by jury as to all claims to which he is entitled that right.

THE PLAINTIFF,

AVRAHUM (ABE) WEISMAN

BY:     ___/s/ Ruth D. Weissman_____
His Attorney,
Ruth Daniella Weissman
ct 25441
P.O. Box 370552
West Hartford, CT  06137
TEL:  860-680-4791
FAX: 860-777-7128
Email: rdw@iamalawyer.net